and 14-1194, Versata Development Group v. SAP America, Mr. Lankin. Do you want to do the swearing in first? Oh, my goodness, usually I have a sign. We'll start again. We have a motion. Yes. Thank you, Presiding Judge Newman. I do have a motion. Ms. Duttry, if you would rise. Thank you. I move the admission, colleagues, of Rebecca Parker Duttry, who is a member of the Bar and is in good standing with the highest courts of Virginia and the District of Columbia. I have knowledge of her credentials and am satisfied that she possesses the necessary qualifications. May I add that the reason I have knowledge of her credentials and am so satisfied is that for the last year, Ms. Duttry has been my law clerk in chambers and has been superb in every possible way I could possibly ask. And I regret that at this point she's leaving us, but fortunately we are, again, fortunate to have a very good replacement for her. But at the same time, I think this is an appropriate occasion to swear her in, so I move her admission. I shall consult with my colleague. Are you willing to agree to grant the motion? The motion is granted. Please proceed to the clerk who will administer the oath. I beg your pardon, Your Honor. I swear that I will perform this oath as an officer of the Supreme Court of the United States of America. You are welcome to the court. All right. We shall start again. Do I need to recite the case numbers again for the sake of posterity? You are welcome. All right. In that case, you may proceed, Mr. Lampert. Thank you, and may it please the court. The board in this case exceeded its authority under the CBM provisions when it construed the phrase, financial products and services to include anything relating to our monetary matters. Right at the outset, let me be sure we're all on the same page. You're doing 1194, the merits case, is that correct? Yes. That's where we are on this one. Yes. I understand the two have been combined, so I'm arguing together, but we're leaning primarily on 1194, review of the board's decision, and the APA provision, the APA action is simply a backup for us in the event that the court were to conclude that it doesn't have jurisdiction in the 1194 action, review of the board. So the short answer is yes, 1194 is my primary argument. Thank you. And in that action, this court has jurisdiction to address the board's final written order, which exceeds its authority, as well as the final written decision insofar as it reaches the wrong substantive result on patentability. Beginning with this court's jurisdiction, section 329, the judicial review provision, says that any party who is dissatisfied with the board's final written decision under section 328 can seek review in this court. Here, Versada is dissatisfied with the board's decision, not merely because of the merits, but because the board exceeded its authority when it issued that written decision. For example, the board has authority only to invalidate covered business methods under this provision, and in our view, this is not a covered business method. This court has authority to review the fact that the board exceeded its authority in issuing its final written decision, authority Congress did not give it. We don't need to challenge the institution's decision at all. It is enough that the final decision is something the board did not have authority to issue. Especially given the strong presumption of judicial review, it's enough that this court has authority to review that final written order. In the district court, the PTO and SAP conceded this court would have authority to review the board's authority to issue its final written decision. In fact, they said that the statute not only could be read that way, but should be read that way. They told the court that nothing in the statutory scheme limits the reasons a party might be so dissatisfied, and this could conclude the fact that the PTAB lacked the authority to issue a written determination rejecting Versada's patent claims because, in Versada's view, the 350 patent is not a covered business method patent for purposes of the AIA. Let's parse these arguments. You can lump them all together and come up with a lot of phrases, but that doesn't help me anyway. The first question we have to ask is, what is a covered business method, and did your invention fall within the meaning of that term? That's an important question. But there's a predicate question, isn't there, as to whether we can ask that question. Now, it's sort of a chicken and egg problem. That is, how do we ask the question until we know we can ask the question? So I'm not sure what the right order is to take that question up in, but let's assume hypothetically Let's assume hypothetically that we think we have jurisdiction to ask the question, was the board correct when it said this was a covered business method case? Your argument is they were not. Correct. They were not. Why don't we address that as a narrow issue of statutory construction, leaving aside for the moment whether we're actually going to ask that question. That's a separate question. Certainly. Okay. I was starting with this court's jurisdiction, but let's start with the board's statutory authority, which under the CBM provision extends to claims, and I'm going to shorten it a little bit, used in a financial product or service. That's the phrase, financial product or service. That has an ordinary meaning. In Dodd-Frank, for example, they define the exact phrase to include things such as extending credit, servicing loans, real estate settlement, deposit taking, selling store value instruments, financial advisory services. Googling the terms reveals things like banking, insurance, credit advice, investment management, financials, other financial services. It doesn't include software that helps you determine prices or calculators or spreadsheets. But for this case, for this case... So you would confine covered business methods to the financial industry? No, I would not. I think Senator Schumer's correct that, for example, if a car dealer sells me a car and then provides financing, he's not in the financial sector or the financial industry, but he's provided credit to me, and that is a financial product or service, so I would include that. So it's not the financial sector, but it is services and products, and that's the new tradition within financial products and services. You can't just take the term financial and strip it away from the words products and services, and I think that is the core of where the board went wrong. When the board looked at this, it said, well, the term financial is an adjective. It simply means relating to monetary matters. And they had equated that with anything complementary to financial activity. It may well be that when you are using the phrase financial activity, that could include anything that involves an exchange of money, buying a house is financial activity, buying gum could be financial activity, but a financial product or service, when you think of that in ordinary meaning, that doesn't include just purchasing a pack of gum. Are you sure? Because my impression, tell me if this is wrong, but as this was working its way through the system, that the intention was to include the kinds of transactions represented in Bilski and in Alice, and yet you can redefine or define those transactions as you ask us to define this one in the same way? No, I think that's exactly what this was going after is Bilski and Alice. Bilski is, for example, hedging. Hedging is clearly the type of financial activity. It involves those traditional things that if you typed in financial products and services, being able to do hedges or buy securities or commodities, all those things, those investment type activities would be covered. So what if we're using this method to more efficiently deal with purchases on using credit card transactions, you know, this swipe thing or something like that? Is that a covered business method? Because credit cards are the extension of credit, the answer would be yes, that is. And in fact, I think the PTO in its trial handbook refers to that type of machinery as the type of thing that would be... The method covered by that patent is not necessarily related to the credit card itself, but the method by which the store owner handles the purchases. I'm not sure I follow the question, but I think the answer is if it's a covered business method, if it relates to the financial activity and it involves, you know, what we typically think of as a financial product or service, then it's arguably within the CBM. If it's a technological solution, then it's excluded by definition. But the one thing I can tell you is simply saying that it involves the transfer of money can't be enough, because that just means all business transactions are covered. And that's just not the meaning of the phrase financial products or services that anybody before this case ever ascribed to it.  Obviously, Congress thought these were two different things, because the statute says a financial product or financial service. I inserted financial there, but that's a proper reading of the phrase. What do you think they meant when they distinguished between a product and a service? Well, in vernacular often you hear things like a financial product with derivatives. It's a type of financial product when you're talking about the market's derivatives. For example, banking is traditionally considered a financial service. You have a relation to the bank, and they cash your checks and hold your money and pay you interest. If there's a distinction between buying financial products, securities might be a financial product. You own the security, own a portion. That's a financial product. Financial service, banking. So that's the distinction between the two. But the one thing that Congress wasn't doing was when you go and buy a pack of guns, that's automatically a financial product or service. If I buy a car for cash, no one would say you just bought a financial product or service, and no one would tell the dealer you just sold a financial product or service, even if you priced it using our invention. This isn't talking about buying a car for cash. It's not even talking about buying a service product. It's talking about establishing, I assume software or something like that, as a pricing mechanism. And why isn't selling a pricing mechanism selling a financial service to these companies? It makes them more efficiently manage their business. And I think the short answer is the ordinary meaning of financial product or service, when you look at it, is traditional things like banking investments and things like that. A software product or an Excel might, for example... If there was a program to automatically price stocks and bonds and stuff like that, and you sold this to consumers or to brokerage firms and things like that, and said, here's something that will make it much more easy for you to advise your customers and choose among the most efficient investments. And it's the same kind of, for some reason, there's all these different theories and stuff like that. If it's the same exact patent you have that involves bonds and stocks, would that be a financial product? It would fit in the phrase that it's used in the practice, administration, or management of a financial product or service. So the stocks and bonds are a financial product, and you're practicing the sale and practicing the management of the stocks or bonds. So something that helps you price tangible goods is not a financial service, but something that helps you price stocks and bonds is? I think the answer is that something that helps you price is not itself a financial product or service. Remember, this has to be something that's used in the practice, administration, and management of a financial product or service. Shouldn't you use a method to determine whether it's a product or service, not in sale of what it sells? I think, well, the question is, what is the method, what is the invention used in? And the invention is used in... Can I just ask you a question? If you have two identical method claims, one is to sell stocks and bonds, one is to sell tangible goods, is the one a financial product because it sells stocks and bonds and the other not because it sells tangible goods? I think they're both going to fall outside for the following reason. I'm sorry, I couldn't hear that. Okay, I think they're going to both fall outside, but it's for a slightly different reason. When the statute says it has to be used in the practice, administration, or management of a financial product or service, that means doing things like calculating the value of an insurance policy, how you manage or practice how the bank operates. It isn't how it sells and engages in financial transactions when it gives. Are those covered or not covered? I don't think they would be. I don't think simply pricing anything that you sell somebody is, but I would admit, because you're in the land of something that is actually a financial product or service, it's closer. It turns on the phrase of used in the practice, administration, or management instead of financial product or service. But when you're merely setting the price of cars or widgets or whatever you have, that's just not within the meaning of used in the practice of management. What if you sell an accounting program to a company that it uses to track inventory and the like? Is that a financial product? No, Your Honor, it would not be. It may be a product used in business, but it's not a financial product or service because it's not what we all understand to be. If you Google those terms, you're not going to come up with accounting software. You're going to come up with investment management advice, banking, insurance. Let me ask you this. If we disagree with you on that, and we think that the board was right here in determining that this was a covered business method, do we need to reach that jurisdictional question you started with about whether we can review that or not? Or can't we put that aside for another day if we find that it doesn't matter because the board was correct here? I think the ordinary rule is the court can't assume an answer to a question. It generally has to address its jurisdiction first. You don't get what the Supreme Court has to say, so they can't drive by jurisdiction. In practice, however, courts have sometimes done precisely that. So if the court were to disagree with us, it probably could go and do that. But ordinarily, the Supreme Court says, first thing you ask, do you have jurisdiction to decide the question? Then decide the question. You don't assume you have jurisdiction and then decide the question assuming you argue and do you have it. One of the problems is you're creating precedent on the assumption you have jurisdiction to decide it. You're telling us that there is no right line by which one can predict which side a particular system is on. But if that's so, and I suppose that's true in the law in general, there is always someplace where the competing interpretations abut. But what I'm not at all sure that I've heard is how to define the extremes as well to be confident for at least the great majority of these situations whether you are or aren't within the statutory purpose. Can you provide such a definition? I think I would have to do it by example because it's a phrase that's used and it has a well-established meaning in the sense that everybody knows what it is. So, for example, it would be things like banking. The traditional things you think of when you're talking about buying financial products are securities, banking, insurance, credit, real estate settlement. All the things, for example, that are listed in Dodd-Frank. The one thing it isn't and the one thing I know is it isn't everything related to financial activity. And that's what the board said and that's wrong. Whatever the far extreme difficult cases might exist, the board's definition is so far off from anything that's reasonable or plausible, it can't be sustained. The court cannot affirm on that basis. You don't put much weight at all on the other phrases in that statute. The other phrases being performing data processing or other operations used in the practice, administration, or management. Those are terribly broad phrases suggesting that they encompass a whole range of activities but then you narrow it down despite the breadth of those sweeping terms to a very limited field. I do because the statute does. The statute starts with data processing and things like that and then it narrows and says not all of them, just the ones used in the practice, administration, or management, very specific activities of a very specific set of things, products and services. Just the ones used in practice, administration, or management can cover almost anything you do. I'm not sure it does because I think setting the price, if you simply say, I would not, for example, say that in the practice of law I use something that sets price. I do lots of things in practicing law but setting a price isn't part of my practice in law. The same thing is true in terms of financial management or financial products. There's all sorts of things people do actuarially or go through for insurance, for example, or calculate for purposes loans or do things to calculate hedging strategies or intermediate and settlement. They're all financial in nature in the sense of being a financial product or service but simply setting a price for an ordinary product, your widget, your car, your anything, that is not a financial product or service. If you wanted to patent a method for determining lawyers' fees in a competitive market based on the nature of the claim and the financial strength of the client and you came up with a way to do that through a data processing invention that you wanted to patent, would that be within the scope of a business method? I don't think so because, again, remember it has to say it's something used in the practice of administrative management as a financial product or service. And that's just a well-known term that financial products and services, you type them into Google, what does it say? Banking, it says insurance, it says credit. No one until this case has ever thought that anything involving a financial activity  automatically becomes a financial product or service. Is there a footnote in your copy of the statute that says check with Google? No, Your Honor. But when you're looking at ordinary meaning, you look out to the universe to see what it is. And you also look at all the agency statutes and how agencies are defined. No agency has ever defined it as being so expansive. If the Federal Reserve were given authority to regulate financial institutions, you wouldn't expect them to regulate everybody who has accounting software or everybody who charges a price. You're moving a little bit, though, when you talk about financial institutions, which is a much more confined universe than financial products or services. Somebody that's not a financial institution can clearly use a financial product. I think that's right, but what I'm trying to illustrate is that when you put the word financial next to something else... I understand what you're trying to do, but every example you bring us back to involves something that actually is in the banking industry or is in the finance industry that would be linked back to those financial institutions. So I'm not sure what much more leeway we have beyond that. Even if you're not in the sector, as my car dealer who gives credit example shows, even if you're not in the financial sector, you may have financial products or services. You may use financial products or services. So it's not just the sector. The key point is when you put the word financial next to certain things, it has a well-understood meaning. Financial products and services does. Can I ask you why is this something that is ultimately tied in with the merits that we should review? Why isn't this part of the decision to initiate? I think the answer is that under Section 329, which is the provision that gives this court courage review, it says that if you are dissatisfied with the decision under Section 328, you can seek review. But the decision is ultimately whether your patent is invalid or not. And you get to argue whether your patent is invalid or not. But you can be dissatisfied for multiple reasons. You can be dissatisfied because you thought they got it wrong on the merits, but you can also be dissatisfied because the decision maker had no authority to issue that decision. And that's precisely our point. So you can be dissatisfied that your invalid patent shouldn't have been invalidated because the court didn't have authority to invalidate it. You can be dissatisfied that the person, whether they're right or wrong, had no authority to do what they did. For example, if a court assumes authority over a case where there's no cause of action, you may have done the wrong, you probably should be liable in state court. If that court lacks authority because there's no cause of action, it's reviewable at the end of the day. And that's a well-reviewed decision, but you're not noting the statutory provision that precludes us from reviewing initiation decisions. Correct. But we don't need to review the initiation because the question we put before the court is, was the final written order within the board's authority? And under Section 18A1, the board does not have authority to issue regulations or address anything other than a covered business method. Under Section 18A2, it's regulations can't apply to anything other than a covered business method. So if a final decision is applied to something that's not a covered business method, that final decision is ultra-virus regardless of what one might think of the initiation. Let's move on to the merits. We may continue this with the other side. I think it's becoming quite clear that what needs to be deciphered is the legislative purpose when the statute is embodied in the statute. So do assume that we're appropriately here this afternoon and continue with the merits.  I believe that Alice indicates, the Supreme Court's decision in Alice indicates that computer-implemented processes are patent-eligible if they, quote, improve the functioning of the computer itself or otherwise solve a technological problem. As this court's earlier versatile decision recognized, the claims here do just that. They make the process of computing prices faster and more efficient using less data. There were computerized price engines before ours. They happen to be slower. They happen to have, they might take, as the court noted, several days to get an accurate price. But Versata's invention dramatically changed the technology. Its hierarchical pricing engine, I'm quoting the court's decision, used less data than prior art systems and offered dramatic improvements in performance. Are you arguing that you fall within 101? Is that what you're arguing? Yes, we're arguing that this is patentable subject matter. You're not challenging the question of whether 101 is a valid standard for the PTAB to have applied, are you? I'm not waiving that argument, but I was not planning on addressing the argument unless the court had questions about it. I was planning on to move to the merits, as Judge Newman suggested, as opposed to the board's authority, which was, involves, is it a CBM patent, is 101 a valid basis, and finally, whether or not there was a claim preclusion. I think, are you willing to assume that we can proceed to the merits and we'll wait for a higher authority to explain 101 to us? Well, yes, yes I am, if that's where the panel wants to go, but I thought that the question of whether 101 was within the scope of PTAB's authority in judging a CBM, I thought that was a live issue. It is indeed, and we have briefed that, Your Honor, and I'm happy to address it. I had just transitioned... Just a few minutes to address it, and I was going to come up. Certainly, certainly. The post-grant review... I just wanted to add, I think I understand the argument from your briefs, but I wanted to know whether you were waiving that issue or whether that issue yet has to be decided, because that also raises the same question of whether we can reach the question of whether, in their institution decision, they said, the problem with your patent is it doesn't, likely or not, whatever the phrase is, it's not going to meet 101's requirements. Now, can we reach that question? Of whether or not there was... Is that question... No, I think that that is washed away. You cannot review the initiation decision itself. You can only review the final decision, and the final decision doesn't encompass a more probable analysis. It just says, this is not patentable subject matter, so that's what you would review. Now, whether or not the final decision was on an authorized basis, whether Section 101 is an authorized basis, that is... The Board held only the 101 issue, everything else went away. That's correct. 102 was waived... Doesn't that mean that the question of whether 101 is properly within their reach has to, of necessity, be reviewable? I would think that is, and I don't think it would, in any of these estimations, be covered by Section 324, the preclusion or review provision that we've been talking about earlier. That is something, either they had authority or they didn't. I want to be sure where we stood, because I want to talk to the government about that. They will have wanted to go to the merits. The only assumption, which I think will bring us to the merits, is that it was all right for the Board to say, to rely on 101, and let's argue about whether their decision under 101 was correct or not. Assuming, for the sake of argument, that it was okay. The answer is, no, they made a mistake here. Because Alice indicates that if you improve the functioning of the computer itself, that should be patentable subject matter. And that's precisely what these claims do, as the Court has recognized. Abstract ideas don't make the computer run faster. They don't get your results faster. This invention does. So in that sense, it's very much like, for example, a compression technique, a patented compression technique that compresses data much faster or more accurately than its predecessors. Or a faster technique for encryption. Or a more accurate and less resource-intensive technique for error correction in computers. All these things make the computer run faster through software rather than changing the hardware. A huge swath of our technological progress today comes from not increases in the hardware, but from making the software that turns your general-purpose computer into a specific-purpose computer work faster and better. There's no reason why innovations in that art should not be rewarded equally and protected by the patent laws just as much as innovations in the hardware itself. Do you agree that if you have a business method that this method is more efficient and goes faster on the computer, assuming that method is abstract, that's not eligible under 101? That's what Alice says. Yeah, I think the answer is if you have a business method that might go faster on a computer, that would be correct. But it sort of depends on... You're flipping it, I think. I'm trying to distinguish your argument. It's not the computer that makes the business method better. It's the business method that makes the computer better. I actually think we're not a business method. We're a technological solution to an existing problem. The existing problem was you had too many tables, too many queries, and it resulted in too much difficulty maintaining things, and the results were very slow. And we revamped to a completely counterintuitive way of doing things. I understand that point. So if that's the case, then if the claim explains this business method will program a computer to work faster, that seems like it may escape the 101 problems. I have a hard time finding that in your claims. I looked at Claim 17, and it seems like the only reference to a computer at all is the word data source, which I understand is construed to be a computer. It doesn't really speak in terms of these are methods for organizing data on a computer to make it work better. It seems like it's methods for organizing data that references a computer. And then in some of the other claims, it says computer instructions to implement this method. I think Claim 17, because it talks about the data sources, and because it has the typical functionality of storing and retrieving, is clearly directed towards computer, and the expert testified that you never would want to do this on anything but a computer. And the reason for this is it's not just limited, as you said, towards the means of storing the data using a hierarchical structure in the first place, but you also have specific mechanisms and totally counterintuitive ways of retrieving that data. It was totally different from prior art. In prior art, you went from table to table. You would do individual person, country, state. It would be very slow. I want to ask you this. If the phrase, any data source, were in Claim 17, would it be passable otherwise? Yeah, I think it still would be. I think it doesn't refer to anything but a computer, and it doesn't necessarily have to be done on a computer. I think it necessarily has to be done on a computer, because there's just no way to get the advantages of the claim except on a computer. This is what I was asking you about earlier, though, in that methods that theoretically could be done by hand but just practically speaking can't be done by hand because of the amount of time it would take, are like saying this method done on a computer is patentable is something I think the Supreme Court has rejected. So that's kind of what I was trying to get at. Is 17 that, or is 17 is this is how to program a computer to do something better? I think 17, 26, and 9 are all ways of programming the computer to do it better. We didn't claim the 200,000 lines of code. We claimed the technique used in that code. But the problem for you, at least in 17, is that the only reference to computer is this vague term in a data source. I think that may be the primary thing in there, but written in light of all the spec and everything that's out there, it is clearly directed to computer implementation. In fact, the board itself, in its decision, says this is directed to a computerized technique 4. So I don't think there's any other way to read it. But even so, if you take a look at steps from 4 down, it's clearly talking about a computerized technique because what's different from the prior art, what was so revolutionary was the prior art went and got your exact right answer by finding the right table and it stopped. What this does is it takes the hierarchical table and it sweeps through the table and it pulls up multiple wrong answers, multiple right answers, ones you'll use, ones you doubt. And then you have to add another step as a result, sorting, figuring out which ones are where on the hierarchy, and then finally you eliminate the ones you don't want. That was a revolutionary contribution because counterintuitively, pulling out too much data and then sorting works much faster than the old method of going through table after table after table until you find the precise adjustment you want. I think I'm well into my rebuttal time at this point. Unless the court has further questions, I think I'll find my seat. Thank you. Okay. Thank you. Ms. Patterson? Thank you. May it please the court, Melissa Patterson for the Patent and Trademark Office. In the AIA, Congress set out two-phase procedures for three different types of new post-issuance proceedings. In each one of those, there is a final and non-appealability bar for the first phase, for the decision whether to institute. With respect to the culmination of the second phase, the merits phase, where you actually look at the patentability of the claims before you, that culminates in a final written decision with respect to patentability. Statutes provide for a specific appeal right and what do you get to appeal? You get to appeal the final written decision with respect to patentability. Statute also has a provision called no appeal. What happens when the PTO makes a clearly wrong decision on whether it's a covered business method in its initiation decision? I think all its initiation decisions are only for the agency and there's no judicial review of those. So if somebody comes in and says, we initiate review on this method to produce a computer chip and the patent office inexplicably says, that sounds like a business method to us. We can't review that question? That's right, Your Honor. But I want to point out, you've just included the word inexplicably. We don't construe statutes on the presumption that agencies will go rogue, will start behaving inexplicably. Yes, that may be true, but there are unique occasions that have come before this court when an agency has made a mistake. You would concede that possibility? I am certain that is true, Your Honor. If you concede that possibility, then you have to concede Judge Hughes' hypothetical case. What do we do if the agency, there are certain statutory provisions that are prerequisites, if you will, or preconditions to the PTO's review under this post-grant process? Well, there's a time limit in one set of the things. What do we do if the agency decides inexplicably, simply because they haven't told us why? We're going to ignore that particular requirement. We realize that they don't need it, but this is an important case. We're going to take it under review anyway and we will initiate. And they initiate, and then it comes up here on final written decision. Is it the agency's view, is it the government's view, that you can come up here with a case in your favor over which, by everybody's reading, you never had statutory authority to deal with? Yes, Your Honor. I think that's a function of the Judicial Review Board. Let's note, if we actually declare someone's patent unpatentable, if you disagree with us about patentability, you certainly have review of that. We can't say you can't review the merits. But if you think that we have erred in starting the proceeding that led to the unpatentability declaration, no, you can't say, no matter how invalid that patent might be, we're going to let the patent owner keep it and enforce it against the public because we think there was an error in how PTO decided to initiate this process. That's what we think Section 324E does. You're saying we can do that? You can review the final written decision with respect to patentability. And we can review it not on the grounds of whether there was prior art or whether it meant 101, but on the grounds that you had no business taking it up at all. Is that correct? I think we're agreeing, Your Honor. I do think the 101 is relevant to the merits phase, which is phase 2, that leads to the final written decision with respect to patentability. I'm not sure you are. I want to make that clear. I think, and I don't want to upgrade it, but I think your position is whether the initiation decision and whether the PTO's decision about whether this actually is a covered business method or not is not reviewable by us. That is correct. Not even after a final court decision. Absolutely, Your Honor. I heard Judge Plater refer to Section 101. I just want to make clear, I think we're in agreement. Forget 101 because that's a peculiar animal, particularly in this case because it's both a jurisdictional issue and it's a merits issue. Yes, Your Honor. Because you happen to have held on the merits that they fail 101. Clearly, we can reach it in this case because that's what your merits case happens to be. Whether that would be true in another case, we don't need to go there. But what I'm reaching for and I think what Judge Hughes is reaching for is you've just written off a couple of centuries of doctrine called ultra-virus. And what you've told us is that doesn't apply to the PTO. The PTO can do any darn thing it wants and there's nothing the courts can say that you people have no business doing that. That seems to me to be a rather interesting reach for an administrative agency. Your Honor, the idea that judicial review bars cabin off some swath of agency action and no court ever touches it is very familiar outside the patent context and very familiar to this court too. For example, in the civil service reform act. This court has jurisdiction over only a very small sliver of MSPB decisions. Even if the MSPB erred in other decisions, if it doesn't fall within the category of things appealable to this court, that administrative decision stands. The APA itself provides for a swath of such action. It says you don't get APA review when statutes preclude judicial review. That is a function of a judicial review bar. It's not a bug. That's the feature of it. That's fine within the range of those things over which we would normally not have jurisdiction. That is, Congress is free to say, I don't want the courts dabbling in how we treat our staff. And for many years, that was their position. They changed it, which is just as well. But that was not a problem for us. That was a problem for Congress. Now, in this case, what Congress has said to us is you people review the final written decision of this PTAB operation, right? Yes. How can we review a final written decision if it isn't final? And how can it be final if you never had authority to make it? Your Honor, I think when you have a thing, a piece of paper called a final written decision, you get to review that. And if we have made any errors in our patentability analysis,  And how about if you've made an error in even thinking you had authority to decide? I think that's what 324E is addressed to. It says that that decision, whether to institute, shall be final and not appealable. I shall help you. The reason that seems to come clear, excruciatingly clear in the legislative history, that the reason for that threshold, no, you can't appeal this threshold question, is expeditious. If you can appeal every stage as you go along, you'll never get through this post-grant review. You'll exhaust the life of the patent, which is always an interest to one side or another on the debate. So it is just a pragmatic business, leave us alone until we get to the end. And I had always thought that that's what it was about. And to me, it's the only reason for justifying what seems to be very peculiar for the reasons Judge Plager has mentioned. But it also occurs to me, but I haven't heard you say, that the same substance is decided anyway after the board decides. If the board says that you lose under application of the CBM rules, then they should have had jurisdiction. If we can get across this threshold, complex though it is, and figure out some pragmatic solution, it would be very helpful to get now to the merits that are before us of the decision. And let us figure out which of these divergent policies we think the legislators had in mind. I can address the merits. And I know counsel for SAP is prepared to do that too. I do want to address your supposition about what 324E means. And says, well, when it says it's final and not appealable, what that means is you get appeal later. You get appeal at the end of the day. That would render that provision entirely superfluous. Because that is the background principle. That is a basic bedrock of APA review, is that you don't get to stop an administrative proceeding midstream. As in FTC v. Standard Oil, the FTC was initiating a proceeding. And if the Supreme Court said- I'm jumping around. Because what I heard Judge Newman say is that the purpose of this non-reviewable provision is exactly what this court has been telling the interlocutory petitioners for the last several months. No interlocutory review. Don't come up here just at the end of the first step. Because we're not going to hear you. And it seems to me that's a perfectly sensible thing. Because that brings about expedition and consolidation of the issues. However, I thought I heard Judge Newman say that at the end, you get to review everything. But even if you didn't have 324E, that would be sensible. And that would be the regime required by the APA. You don't get to stop an administrative proceeding midstream. But now the question is not stopping. There's no issue here about interlocutory review midway through the process. The question before us is at the end of the process, what issues remain to be reviewed? And if I understand you correctly, your answer is one issue that's not to be reviewed is whether you all had any right to decide the case in the first place. That is right, Your Honor. If you just wanted to delay review until the very end, you would not need section 324E. It may be that we're arguing over whether that bar is clear enough. Or it may be that we're arguing over whether Congress has the power to impose such a broad bar at all. So let me just ask you that. Do you think assuming this bar, the statutory bar, is read broadly enough to say any decision connected to the initiation, including whether it is a CBM covered method, is not reviewable on appeal? Does Congress have the authority to do that? Absolutely, Your Honor. What Congress gives in the statute with one hand, it can take judicial review for another. There is absolutely no problem, statutory, constitutional, anywhere with Congress doing that. In fact, Congress routinely does that. That is what a judicial review bar does. So I think the real question here is, is that what Congress meant to do? And we do not think there's a reading of 324E that leads to a contrary conclusion that doesn't run into one intractable statutory interpretation problem or another. If you read it to just delay review, you run into a superfluity problem. You wouldn't need this bar if all you wanted to do is to delay review. You cannot confine this bar either to the sort of non-institution decision. And I think the interlocutory decisions that Judge Plago referred to, St. Jude in particular, recognize that this, in fact, might be what Congress meant. They said 314B, which is identical in all relevant respects to 324E, might well preclude judicial review by any route. Now, the court did not need to decide that, because of course it did not have before it a final written decision. But that certainly is a plausible reading of what Congress meant to do. And we think it is the right reading, because there is no other reason for 324E being in there. I do want to turn to some of the other threshold issues that Could I ask you, particularly before you go away, because I think this is probably you and not your friend as much. The broadest reasonable interpretation will apply here. Is that an interpretative procedural-type rule, or is it a substantive rule? I think it's a rule about how to conduct proceedings, Your Honor. They say, I think it was the two. Well, is it a rule about how substantively the patent rights, the scope of them are construed? I find this puzzling. I mean, frankly, I struggle, and have struggled not just here, but for 20 years on your side, of what the difference between substantive and procedural rules are. But it seems to me that this is a particularly perplexing one. Because if you read it as, this is the procedures by which the PTO uses to adjudge patents, it's procedural. But if you think of it in terms of, this is a rule that dictates what the scope of the examinative patent is, then it seems substantive. No matter what the label is, and I agree that the labels run into each other and don't have a lot of meaning in some instances, this was a rule promulgated per PTO's new grants authorities. So this court, of course, has a line of authority about PTO's scope of authority under Section 2B. With the creation of these new proceedings, Congress gave PTO some very capacious new grants of rulemaking authority. In Section 18A1, you have to establish and implement the whole review. In Section 326, you have to establish regulations governing and establishing and governing these proceedings. And you read that to extend to substantive standards for determining the scope of patent. Certainly, Your Honor. Whatever this particular rule is, whatever label applies, when you have been tasked with establishing, implementing, and governing a process, when you say, OK, here's how we're going to go about doing our process, that has to be within your rulemaking authority, however that rulemaking authority is. So you're basically arguing that, and your position, I take it, that the old substance versus procedural line that was so busily drawn under the old limited delegation of rulemaking authority doesn't really work anymore. I think it's just not relevant anymore, given the new grants of authority. I see that I'm running into FEP time. Well, we'll extend your time, because I think having raised this question of broadest reasonable interpretation, there's really just one question that I'm interested in the office's view. And that is, it isn't really questioned, at least not as vigorously as here, when we're talking about the ex-party examination process. The initial examination, or the routine re-examination, when it was simpler. Now we have a system that's supposed to substitute if it works the way the legislator had in mind. For litigation, cheaper, faster, conducted by experts, more likely to come out right. And then it's over, and we know where we stand. Is the office taking the same position for broadest reasonable interpretation, now in this new, in a sense, first impression context for this, I'll call it a rule? Or is the office keeping its mind open or flexible? I know you took a position here. It was argued on all sides by several amicus briefs. Are you drawing that distinction? Or is the position of the office is that there's no distinction in reasoning? This is how the office should work. I think both, Your Honor. We both think that prior reasons for having BRI as the standard in other earlier post-issuance proceedings still hold here. You still have the ability to amend. You still do not start with a presumption of validity. But I think there's an additional reason why we need to use BRI in these new proceedings, which is that the statute specifically contemplates the joinder of any other post-issuance proceeding going on. So if you have both a re-examination, in which this court has already blessed the use of the broadest reasonable interpretation standard, going simultaneously with a post-grant review, the statute specifically says, the director has the discretion to join those. And it would be exceedingly strange if you had different standards of review going when you had your re-examination lens on, as opposed to when you had your BRI or your post-grant review lenses on in the very same proceeding. But from the viewpoint of, finally, the judges who have to figure it out and presumably come up with the right answer, isn't it even stranger that on exactly the same references and reasoning and everything else that you authorize a procedure in the trial court and a procedure in this new patent office trial court, which, by definition, can come out differently? I don't think that's strange at all. And I think this court's decisions in Ethicon, in Baxter, say- That wasn't my question. Never mind Ethicon and Baxter. And they weren't dealing with the America Invents Act. These were all examinations and, at most, ex parte re-examination. But they all have the same features, where you don't start from a presumption of validity. You have a different standard of proof. I wasn't asking about the presumption of validity. And the ability to amend. Of course, sister courts can't narrow patent claims. Well, we don't know. The rumors are that it's not so easy to amend under the America Invents Act. So the entire philosophy for the initiation in ex parte examination as to why, well, yes, let the author say, well, you could read this reference in a screwy way, because it doesn't matter. Just fix it. Your Honor, you certainly can move to amend your patent. If you think that the PTO was being too stingy with motions to amend in the post-grant and inter-parties NCBM context, there are cases coming up the line saying, PTO has been too stingy. You could act there. You don't read a statute that explicitly gives parties  we don't think that that is really a thing, despite Congress's provision for it. So we are going to say that the PTO acted arbitrarily and capriciously in using the same standard it has used in every post-issue and proceeding. I asked if there was a policy. Yes, Your Honor. I think it's announced in the regulation and in the Federal Register notice that accompanies this. And it says, there is a policy, even though the ability to amend is, let us presume, significantly different. Yes, and I want to note, it's not at all strange that the ability to amend would be different. When you amend during an initial examination, that doesn't mean you have an issued amended patent. That means the patent is still in examination. As soon as the board, looking at granted patents, grants a motion to amend, that patent goes out the door. So you might be a lot more careful in how you grant motions to amend on an issued patent than you would on a patent under examination. I am concerned that I'm taking too much of SAP's time. We are running over, but are there any more questions for the office? More questions for the office? OK. Thank you, Ms. Patterson. Thank you very much. May it please the Court. We've had a lot of discussion about whether or not the 350 patent is a covered business method. And we've mentioned whether or not section 101 is a ground for post-grant review. I'd like to just bring to the Court's attention that the patent owner waived those arguments by, they've admitted that the institution decision is not appealable. This is a 101 issue. I think, to me, I seem to listen to what I'm saying. And I find this very difficult here. It's clear to us, or somewhat clear to me, the Supreme Court has said an abstract method done more efficiently on a computer is not eligible under 101. But that a method that improves the functioning of a computer is eligible. Why isn't Claim 17, which talks about different ways to organize data on a computer to get faster pricing information, an eligible business method? Well, Versata argues that the claim makes the computer process faster, or suggests that that changes the way the computer works. It doesn't actually. It makes the pricing math happen faster. Those steps that the patent owner pointed out, those four steps of storing, and retrieving, and sorting, and eliminating the data, that's the price calculation itself. And so the computer doing those types of functions, even actually retrieving data, was one of the functions that they looked at, that the Supreme Court looked at, in Alice, and said, that's just a computer doing what it ordinarily does. So you think this falls on the other line, that this is an abstract business method? I don't think the court needs to even go to the line. Yeah, I think this one is so clearly a business method with a computer tacked on. If you look at the 350 patents, it has an abstract idea, and the patent owner has admitted there's this idea of calculating prices. And the meaningful limitations, at most, are a general-purpose computer, although Claim 17 doesn't require a computer at all. But the other claims, they recite a copy of abstract method Claim 17 with the words apparatus or project. In addition to the claims here in 17, they had something like a means for programming a computer to do this. And then, as a patient, they had specific algorithms or flowcharts. Do you think that might change the outcome here? You know, this court has been careful not to try and draw the, in ultra-martial, for example, not to try and figure out where the boundary is of abstract ideas in patentable software. It's not necessary here, I don't think. That's why I asked you the hypothetical. I know you don't want to answer it. I don't know the answer to it myself. But it does seem to me that, at some point out there, there has to be some kind of thing, unless what the Supreme Court has really said is software and business methods are never eligible, which I think they haven't. What would it take to get this eligible? Well, I think what the real question, and I agree, it's a very difficult question to answer. And the Supreme Court has decided to do so. It's actually an easy question to answer. It would take a court decision. I can give you an example. Yes, I would look at ultra-martial as a good example, where this court looked at a very detailed claim with 11 ordered steps and said, even with all of these steps, this is an abstract idea. And all the parties agreed there was a computer. And still, it was just doing what computers do. I do think there may be a line, as you suggest, between a business method with a computer tacked on. I think we have a whole line of cases. Bancorp is a good example where that happened. But I think that maybe the thing that makes it a little easier to analyze this case in particular is to look at the claims themselves, which is what really matters for 101. And when you look at these claims, they line up exactly with the types of claims in Alice and ultra-martial. An abstract method claim 17 that could be performed with a pencil and paper. We performed it ourselves during the hearing at the PTAB with the charts on a slide. And then that method claim is too abstract to be patentable. And the rest of them add words like computer-aided method or apparatus or processor. And it's sort of a quintessential business method patent that never should have issued under Section 101. And that's really the board. It's not even a close call, really. And I don't think that this court needs to go to the edge of software penability or something to resolve it here. Is this patent a technological invention? It is definitely not a technological invention. And I might use that as a segue to the covered business method question, if that's OK with the court. Just like this case is not close to the edge of 101, it's not close to the edge of a covered business method. It is plainly the type of patent Congress is talking about. It was filed in the wake of the State Street Bank case at the late 90s, early 2000s. It has problems under 101. And it's being enforced against the public. That's exactly the kind of patent that Congress was talking about when they wrote Section 18. I mean, if they just said, you're going to initiate review of any covered business method, then you'd be on extremely firm ground here. They did at least add the qualifier of financial product and service. I'm glad you brought that up. So the patent owner was making a distinction between maybe what you're pricing, but if you're pricing things you sell in the corner store, that's not a business method. But if you're pricing services of some sort, financial services, well, if you look at the 350 patent, it actually says that a product, for the purposes of this invention, can include tangible products as well as intangible products such as services. So the pricing math that is being done by the claims in the 350 patent can apply to services. So even under that sort of interpretation of if it matters what you're pricing, which I don't think it does. And I think if you look at what Congress is talking about, the legislative history talks about pricing real property, appraising or pricing real property or personal property is the type of thing we're talking about for a covered business method. Congress talks about that. Can I ask you a hypothetical? I want to see where you go here. Sure. Suppose you're a rental car company and you have come up with a new method for making sure that the rental cars are most efficiently distributed at the pick-up and drop-off point. And that's a business method. It has a bunch of different steps. Look at this, look at this, look at this. We're leaving aside all the one-on-one things. I'm just trying to decide whether we fall from the financial products or services. And the whole point of that is it makes your operations work better. And obviously, if your operations are more efficient, it's saving you money. So in that sense, it's a financial service. But is that the kind of financial product or service they meant here? Just because it affects the company's finances or does it have to be something more? I think Congress said that the definition should be interpreted very broadly. And Judge Ploeger, you noted some of the terms. I have a question to answer that. Do you think that hypothetical is a covered business method eligible for review? It's something that's practiced in commerce, which is another word that Congress looked at. Those are the types of things. And again, the covered business method determination is not a determination of whether or not it's patentable, as you said. Sort of setting aside what Congress said, those are two different questions. So it seems like you're taking the financial product service from about as far this way as your opponent was taking it that way. Well, and I think one of the other indicators is Do you have any boundary to where you're taking this? We don't have to get there today, certainly. This patent is plainly a covered business method. Class 705 is one of the same. It's plainly a covered business method only if you take the boundary out to where you want it. Well, and I don't think that we're even close to the boundary. I think if you read what Congress was talking about when they wrote Section 18, the time frame that this patent came out, the problems with 101 after Bilski, this is exactly the type of patent they were talking about. Also, the technological invention is one way. So you're saying that anything in the world could be a covered business method. I'm sorry, go ahead. No, that's OK. So you think the boundary is anything to do with money? We would defer to the Patent Office on their definition. But there is a large swath of things that Congress carved out, which is technological inventions. And they left it to the PTO to define technological inventions. And the PTO did that. And this patent fails every prong of that test. And I think that's further evidence that this is not the outer boundaries case, but very clearly. For example, one of the prongs is, is there a novel, non-obvious technological feature? Look at Claim 17. What do you understand they mean by a technological feature? What does that mean? So Congress specifically directed the PTO to determine what that would be. I understand that. And I found the PTO's definition remarkable. Because what they're defining is, what is a technological invention, right? And how they define it is they say, in determining whether a patent is for a technological invention, what you look at is the following will be considered. Whether the claim subject matter as a whole recites a technological feature. They use the same term to define it. That is novel and unobvious over the prior art. And guess what? Solves a technical problem using, guess what? A technical solution. So as long as you don't need a definition of what a technical invention is, that's a wonderful explanation. So I think what they were getting at there is they're looking for technology, novelty in the technology. Some advance in technology. And while they said it's not the same question as 101, I think there is some overlap there. I think they're trying to focus on it. You said this is clearly a technological invention. Well, it's clearly not a technological invention. It fails all those problems you just read. It fails every one. For example, the novel and non-obvious. What do you understand a technological invention to be? Well, I don't think you actually need to reach that in this case. Because the board found that there's not even a novel or non-obvious feature in the claims. When they instituted it, they found every feature in these claims present in the prior art. So whether any of the features is technological or not, they're not there. You know, you make very nice arguments. But you don't want us to reach all the interesting issues. That's because Versada waived almost all of them at the patent office. Versada waived the challenge of whether or not this is a covered business method. And they waived the argument that section 101 is not a proper ground. Let me ask you an easy question. Please. It has to do with collateral assault. So here we have a case where the district court in a jury trial, they found their patent valid and infringed by our client. And in the fullness of time, this court affirmed. Meanwhile, the patent office, after the enactment of the American Invents Act, was one of the first to put this patent back through the system. And the office decided the patent was invalid for an assortment of reasons that we've been dancing around. Suppose we have the contrary situation. I think the position is pretty clear in your brief, is that there's no estoppel against what the office did just because there was a trial and affirmance set up as a patent. Never mind, the office could overturn that, provided the procedure starts somewhere before the absolute finality or whatever reason. I want to ask you the converse of that situation. Let's say this is a trial in the district court that holds the patent invalid and not infringed as it's going through the system. Meanwhile, for the double security, perhaps, the defendant, the accused infringer, goes to the office. And the office upholds the patent. Does the same rule provide, does that PTO ruling of validity and patentability override the prior decision in the district court? So I think this court decided that issue in presenting it, which is not the issue here, which is that as long as there is something still alive in the district court proceeding, a patent, a final, affirmed patent office. They didn't decide in presenting it that an office decision that the patent was valid overruled a court decision of invalidity. That's my question to you. Whether the patent office won't be finding of invalidity cancellation is a problem. I'm trying to understand where, if any place, the lines are, the relationship between the office and the courts. I think Congress actually spoke to this. There was, in the inter-parties re-exam statute, a limitation. There was a specific estoppel that would apply and prohibit filing of an inter-parties re-exam. In the situation that you were talking about with the district court, once that judgment is final and affirmed, you couldn't file an inter-parties re-exam thereafter. But that was taken out of the statute. My question is on the identical sequence of events here, except that the decisions are reversed. Is your view, your understanding of the statutory purpose that the decision of the office under the American Events Act will overturn and validate a patent that's been invalidated by the courts? I think that Congress intended the PTO to reconsider CBM, covered business method patents, in exactly the situation you're talking about, where they have to have been sued on them. So this provision is narrowly tailored to business method patents. They will all, all covered business method proceedings, will necessarily have that litigation. And the point of the question. I'm sorry. I'm not trying to. I'm addressing the factual scenario here. No, other scenarios. Yeah, I mean, so you have a district court action file on a business method patent. And either, leave aside all this statutory estoppel provision. I can't keep it in my head right now. Somebody, and the defense is going to be that it's invalid from the accused infringer. But somebody, either the patent holder or the accused infringer goes to the patent office and challenges it there too. No. We have the reverse of the situation here happen. And that is, the district court finds the patent invalid and unenforceable. And therefore, doesn't award any damages. But the patent office says that it's valid. And it is enforceable. Is the district court bound by the PTO's decision that the patent's valid? No, because the district court asks a different. The question at the district court is different. The question at the district court is whether the patent is proved invalid by clear and convincing evidence. And under this statute, a post-grant review requires only a preponderance of evidence. There's never been a standard of review. Let's say the standards are met. I think let's try and keep this as a thanks to Bill Hughes. We're trying to present a simple question. It's tried in the court system. They hold the patent invalid and not infringed. And I appreciate here also, we haven't really gotten to the fine point that validity wasn't appealed, only infringement. But all right, so the patent office holds it invalid. Meanwhile, somewhere in the procedure, but before some final judgment, so we avoid the prosaenius problem. Someone puts it in post-grant review. The office does what it does adequately, confidently, meets all of the burdens that are the most stringent burden and says this patent is valid. Does that override, in your view, what the patent is? In my view, that's what the patent office did when it was initiated. The statutory purpose here. Well, that happens every time. Once the patent issues, that's not something unique. Every time the patent office issues a patent and it is later invalidated by a district court, there is a disagreement between the two. And so, in your view, it's not any different under the new CPM? No, I think this court's cases on re-exam are really clear on the claim perquisition not applying. Even if the patent is re-examined during the pendency of the district court litigation, it's bound to be valid by the patent office. It doesn't have to be in the statute of what the patent office has in validity. Well, the questions are different. And this court said so. I understand that. I assume the questions aren't different. We're trying to get at collateral stopping. We're not trying to get at standards and stuff. Although, I understand that plays into that. But I think your answer is the district court doesn't have to pay attention to the PTO's validity decision. My question was, does the PTO have to pay attention to the district court's decision? And I think that was answered by this court in Swanson and construction equipment, where even on the same prior art, even after- I think the effects were all different. And they were not American Vents Act. They were not post-grant review. They were not filling the parties with all of the safeguards that we have here. I mean, I would like to see this system work the way I understand it was designed to work, that there will be an easier, quicker, less expensive system on which you can have confidence. It's decided by experts who know what they're doing, who have the time, and all the rest of it. And I'm trying to understand if we're talking about one-way estoppel or no-way estoppel, or if this is totally independent and no one can figure it out. I think for the covered business method, it's a much more limited situation. And I think it is. This is an example of it working just as it should. That the AIA is working as it should. The covered business method provision, in particular. If you look at the legislative purpose there- You're saying that the office can overrule and invalidate a decision by the court because the office has the last word? That's not different than it was under re-exam either. Under re-exam, the office did not overrule the decision of the district court. This is a different situation, with a different statute, designed to impart finality through the body that is best equipped to make the decision. That's right. Over my time, I'm happy to keep talking, but I didn't want to take too much time. I just want to answer the question, yes or no. I'm sorry, I disturbed myself by saying that. Can you ask the question one more time? I think there's no position that the later decision of the office holding the patent valid overrules a prior decision of the district court that it's invalid. I think under Fresenius, as long as that first case is still alive, there can be an effect. But that's not the issue here. Versada's argument is that you couldn't file the post-grant review petition after a final judgment. This court's law in re-exam and the fact that Congress removed the statutory estoppel from inter-parties re-exam and the cover business method section specifically targeting patents that are being sued, these people are being sued on. That's exactly what this section 18 is about. Well, I appreciate it's not this case, but I think the principles in Congress are things that we have to think about as well. I think there are a lot of issues that this case has raised that don't need to be decided for you to decide this case. Many of them were waived by Versada at the patent office. Claim construction, for example, is moot. Can you address... I think you're... Maybe I'm putting words into your mouth, but I think your answer seems to be that there's not really a stop on either side here. But assuming that is your answer, how do you deal with the... I can't say this right... Nassel case involving the TTAF? The Nasselak? I'm not sure I said the pronunciation either. Nasselak was a trademark case, as you noted. The nature of the challenge at the patent office is slightly different. Everyone agrees that statutory claim preclusion doesn't apply here, so we're talking about common law claim preclusion. And for it to apply from the final judgment, there has to be the same question, same claim. And this court has explained that... And actually, in Nasselak, they explain that the same claim from a patent standpoint is patent infringement, was the question. Even in a declaratory judgment action, the claim for the purposes of claim preclusion is the underlying accused devices. And so if the same devices are not accused in a second case, then they are not the same claim for the purposes of claim preclusion. And the court said as much in Nasselak, although it was a trademark case, they specifically said in a patent case, a prior finding of no invalidity... What about the second part of that opinion, though, that goes on then to say you also can't go back to the TTAF to collaterally attack a prior judgment? Right. And that's not the situation here. That's not the question here. Persada's argument is that you can't file a post-grant review after a final judgment. And that's a very clear question under common law principles of claim preclusion. By the way, they waived claim preclusion. I know, I understand. I'm not sure that you're going to get very far in your waiver argument. But... We don't need to. We went a long way. Why isn't what you were doing really a collateral attack on the injunction that was issued against your client? Because Congress created this law for the situation that SAP found itself in. It was being sued for infringing a patent that the patent office has now said should never have issued. It claims it should be canceled. Wait, that confuses me. Because that sounds like you're suggesting that Congress can displace this notion of judicial collateral assault that's a judgment rule and say, you know, we're not going to require that respect be paid in district court judgments. Well, I don't think that's the case. But here, Congress has talked about the coordination between these post-grant proceedings at the patent office and district courts. There are several different provisions that prohibit you can't go and raise the same issue you've raised in the covered business. But the problem, I think, is that you were in litigation at the time this was passed. So you're later in the game, and I suspect Congress actually, you know, anticipated for most funds going forward. Is your argument on that, what if there was a complete and final judgment in the district court litigation? Nothing out there. It wouldn't matter. However final the judgment of the district court was would not matter for the principles of claim preclusion. No one is arguing their statutory preclusion. Section 18 permits you to file a petition when you have been sued. That is exactly what, we'll answer this bit. If that's the case and you go back and you get the patent declared invalid. Under regular collateral estoppel principles or finality principles or whatever, are you still precluded from going back to the district court and asking to have the injunction dissolved? I think in Fresenius this court said that as long as there's issues of the remedy No, but my hypothetical answer is it's a completely final judgment. Oh, after the affirmative judgment. Nothing else is going on. No one argues that you can get your money back if a patent is issued on this later. I'm talking about the injunction going forward. You're not talking about a refund of the damages? It doesn't matter here. The district court case is disclosed though. So that's not an issue that's actually raised in this. Because of the settlement you mean? Yes, the district court case is completed in this case. So there's the issue. Are you saying it's because it's completed or because of the settlement? We saw in the press how this finalized. The district court case was settled, yes. Okay. So the effect of the PTAB. That issue is not present in this case. Okay. If I could just mention Can I mention broadest reasonable interpretation? You mentioned it earlier. I just wanted to point out that lots of people want to talk about it but even the amicus parties who filed briefs on the issue noted that it doesn't matter here. The board found under either interpretation the claims would be invalid and under Section 101 you don't need claim construction so the court doesn't need to reach that issue here. Okay. Thank you, Ms. Arner. Mr. Labkin. Thank you. Beginning with this court's jurisdiction. I think the courts recognize the enormous consequences of the PTO's argument that this court has no authority to review whether or not the board has altered virus. If the PTO were correct then the board could, for example, subject every patent to post-grant review notwithstanding the nine-month limitation period by deeming each and every one of them a covered business method and this court would be powerless to do anything about it. Never before has the PTO been granted the power to invalidate an issued patent destroying property rights with no court having authority to address whether it is ultra-virus. And in that sense that sort of ultra-virus review I think is illustrated by in the strong presumption judicial review of the case that we cited which is called Riley v. OPM. And in Riley the provision was quite similar. It said that the decisions of the OPM concerning these matters are final and conclusive and not subject to review. Are you saying that the question I posed to your friend from the government if Congress actually made the FAR very clear that nothing pertaining to initiation including the discretionary decision of whether it actually is a business method or not is subject to review by the court that they couldn't do that? I think it would at the very least raise serious due process issues that an agency would be sole adjudicator of its own statutory ability and no court would have authority to... The question is not whether it would be peculiar nor is the question even whether a rational Congress might choose to do it. The question is let's assume Congress did it. Then what? I think there's serious questions about its constitutionality but there's a strong presumption that Congress didn't do that. What is it depriving you of? You still have the right to due process to challenge the PPO's decision on the validity of your patent which is your property right. But it deprives you of the right to have... In the process, do you have a property right in the patent? That's correct but it deprives you of your right. The legislature's provided who determines whether you have a property right or not and when the agency says I do it and no court can do it and it's beyond the statutory... That's a significant problem but the courts will not presume that Congress did that and the language here doesn't come close to doing it. The PTO admitted the language didn't do that in the proceedings before the district court. It's kind of incongruous when they say no it's sufficiently clear to do that here. And I just want to mention the Riley decision. It said decisions are final, conclusive and not subject to review. But this court in Riley v. OPM said well that means we can't look at facts. We won't look at factual determinations. But the court can still address a misconstruction of a governing legislation or some other like error going to the heart of administrative determinations. That's exactly this. Does the agency have statutory authority over these patents? Are they CBM patents? Does it extend to section 101? Does it extend notwithstanding claim preclusion? Those are issues that this court has authority to review. If I could turn just for a moment to waivers since it came up in the proceedings. There is no waiver here because we had no ability to review these issues at the trial stage. The PTO's regulations are clear. The trial order here on JA-43 was clear and the trial hammer are clear. The regulations say the patent owner may file a response to the petition addressing any grounds for unpatentability not already denied. No authority to address at the trial stage anything other than unpatentability. Congress may address anything you want just not grounds already denied. It was said you may address any issue but not unpatently already denied. The second is the order here which appears at JA-43 is very, very clear. It says trials limited to the grounds identified in 1 and 2 above and no other grounds are authorized. You look up the page to 1 and 2 above and what do they say? 35 USD 101 for claims 17, 26 to 29. Point 2. Section 102 for claims 27, 26 to 29. There's no authorization in that order for us to address the board's authority on CBM's proceedings at the trial stage, claim conclusion, or estoppel. You can't waive an argument that you have no right to make at that stage of the proceedings. And the PTO's trial handbook makes it especially clear. It says any claim or issue not included in the authorization for review will not be part of the trial. The authorization for review on page 43 of the Joint Appendix doesn't say we can raise any issues. We couldn't raise them at trial. There's no waiver by failing to raise something at a time when it is prohibited. Turning briefly to the argument about superfluity, Section 324E in terms of the jurisdiction of this court wouldn't be superfluous if you could review the ultra-virus actions by the board at the end of the day. It has two effects right off the cuff. One, non-initiation decisions, non-institution decisions, those would be final and potentially reviewable under the APA. But they're not reviewable because, one, it says they're not final and reviewable, and two, you get to the alternative provision, Section 329, and you don't have a final written decision that's reviewable under 328. So those become unreviewable by virtue of 324E. Another thing that it has as the effect of, if for some reason the grounds that you say were error for initiation sort of get washed away, it was absolutely clear that it wasn't unpatentable, or more likely than not unpatentable at the time the decision was issued because of the record, for example. But the record later improves. In the final decision, there is enough evidence there. You can't say, well, this shouldn't have been issued in the first place if the record wasn't good enough. You only get to challenge the final decision. But if that final decision is ultra-virus, if the board had no authority to issue it, that is reviewable. Turning very quickly to the issue of crane collusion, this is a significant issue because after seven years of litigation and a final district court judgment in this case, this action was brought in an effort to overturn that judgment. But the district court had reached final judgment. And nobody in the board never disputed that that has a crane collusion, potentially crane collusion effect. On page 19, it says flat out. How do you reconcile, I understand that position, I understand the case that you just made, but how do you reconcile that with proscenium? Oh, I think that's actually fairly easy because proscenium, remember, is an ex parte re-examination, correct? There's no other party to it other than the PTO. And so your crane collusion operates against your counterparty. It doesn't operate against the world at large. And so proscenium doesn't have a crane collusion in it of any sort. I assume you would agree though that if somebody other than SFT had gone out and filed for a TV interview, that they wouldn't have been precluded. That would be correct because crane collusion simply operates between the parties. It says you've now had your chance to legate it in court. The day is over. Anything you could have raised or did raise is done. And the board's sole authority... So given that the reason Congress enacted this provision was actually to allow the party against whom infringement was being alleged to go to the PTO in a parallel proceeding, why would we reclaim proscenium into that just because a district court decision had become final but then was on appeal? That's what I'm really getting at. I think the question is why you wouldn't for the following reasons. I don't understand the distinction between ex parte invalidation and this new provision to be enough to distinguish... Oh no, it very much does because the CBM provision has a requirement for someone to bring it. And it says that you can only bring it if you've been sued for infringement. And that means we not only have the same counterparty, SAP versus Rosado, in an adjudicate proceeding meant to replace litigation, but we also have the exact same products at issue because the basis for their standing to sue us or to bring it, or rather the CBM action and petition for it is the fact that we sued them for infringement based on specific products. So it is exactly this type of thing that we... The whole argument on why they're precluded is because there was a final decision. But our reasoning in proscenium suggests that kind of finality is not enough when you're considering the PTOs and validity decision. Well, it's certainly not... That sort of finality... Proscenium simply doesn't address claim preclusion because it wouldn't apply. You didn't have the same parties. You've got the same parties here. You have the same products. Do you apply claim preclusion? The board says flat out on a stopper recognized by the regulations may arise from claim preclusion. The sole basis, and under Chenery this is the only thing the court could review on was it wasn't sufficiently final because it was on appeal. That's the only basis the board gave for saying there's no claim preclusion. The only one. But that is clearly wrong and nobody seriously defends it. This court and SSIH equipment and Wright and Miller both say and I'm quoting section 4433 preclusive effect of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided. It's an absolutely foreclosed rationale for rejecting claim preclusion. Under Chenery this court can't affirm an alternative basis. It can only affirm on the basis given by the board itself. It's entitled to the review of the PTO as an agency and it can't affirm on the basis of alternative rationales given by the government's lawyers. And that by itself should close this case on claim preclusion. And finally, turning back slowly to the merits for a very brief note because I have 26 seconds left on the clock here. There's two ways to get faster results on a computer. The first way to do it is make a faster computer. The second way is to program it better. Come up with a different way of doing it so the computer returns the results faster. There is no reason in the patent laws no reason whatsoever in the laws of nature that we would prefer the fact that you can do it by increasing the hardware speed as opposed to coming up with a better way to do the software. And the software does nothing more than convert a general purpose computer into a specific purpose computer. The method used here dramatically through a counterintuitive method increased the speed at which you could pull your prices. It is a patentable invention within the words of Alice because it improves the functioning of the computer for pulling prices. If there are no further questions, thank you very much. Thank you. Thank you all. Thanks to all counselors. This is well presented. We did our best to ask our toughest questions and managed them very well. Thank you all. We will adjourn until tomorrow. All rise. The audit report is adjourned for tomorrow morning at 10 a.m. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Is it on? Okay. Thank you very much. You're welcome, sir. I hope they feel better. Any questions? Thank you. I have a question. I'll ask my friend to take a picture of you in a chair, is that okay? Okay. Okay. We'll get your stuff out of the way, too. Okay. I'll take a picture. Thank you very much. No problem. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you so much, Ray. Thank you. Why did I listen to the... Did you get it by yourself already? Thank you. You took it, yes. Thank you. I heard you kept it by the investigate version. Did he have to take a picture of you? Yeah, he did. We've got to continue.